**In re WORLD METALS, INC., Debtors.**

**Kathryn Belfance, Trustee, Plaintiff,**

**v.**

**Huntington National Bank, Defendant.**

**Bankruptcy No. 03–50453.**
**Adversary No. 03–5117.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Aug. 26, 2004.

Ronald Towne, Duriya Dhinojwala, Guy, Lammert & Towne, Akron, OH, for Plaintiff–Trustee.

Glen Garrett, Ziegler, Metzger & Miller LLP, Cleveland, OH, for Defendant, Huntington.

### MEMORANDUM OPINION RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter comes before the Court on cross motions for summary judgment and related pleadings filed by plaintiff-trustee and defendant, The Huntington National

Bank ("Huntington").[1] This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b).

## STIPULATED FACTS

Pursuant to their stipulation, the following are the *only* facts which the parties agree are not in dispute in this matter:[2]

1. World Metals, Inc. ("World Metals") is an Ohio corporation that filed a voluntary chapter 7 bankruptcy petition on January 31, 2003.

2. E. William Glause was the president of World Metals and also a fifty-seven percent shareholder in the corporation.

3. Mr. Glause is married to Patrice Woolard–Glause who also used the names Patrice Woolard and Patrice Glause.

4. Patrice Woolard–Glause was employed by World Metals as its bookkeeper and controller.

5. On August 7, 1998, Patrice Woolard–Glause opened a personal checking account with Huntington (the "Woolard–Glause Account").

6. From April 30 to May 17, 2001 ten separate checks totaling $124,315.17 (the "Checks") were deposited into the Woolard–Glause Account.

7. The named payee on each of those checks was one of the following: World Metals, SPEC/STS Metals or Spec Metals.

8. World Metals sustained no damage to tangible, physical property.

9. On May 23, 2001, Huntington issued a cashier's check payable to "World Metals, Inc." in the amount of $61,791.04 and delivered it to E. William Glause and Patrice Woolard–Glause.

## DISCUSSION

A court will grant a party's motion for summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. The party moving for summary judgment bears the initial burden of showing that there is an absence of a genuine dispute over any material fact, *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), and, upon review, all facts and inferences must be viewed in the light most favorable to the nonmoving par-

---

1. The following pleadings were considered by Court: (1) the complaint [docket # 1]; (2) the answer [docket # 9]; (3) the parties' stipulation of facts [docket # 19]; (4) plaintiff-trustee's motion for summary judgment [docket # 21]; (5) Huntington's motion for summary judgment and memorandum in support thereof [docket # 22 and # 23]; (6) plaintiff-trustee's response to Huntington's motion for summary judgment [docket # 27]; (7) Huntington's response memorandum in opposition to plaintiff-trustee's motion for summary judgment [docket # 28]; (8) Huntington's reply memorandum in support of its motion for summary judgment [docket # 31] and (9)

plaintiff-trustee's amended motion for summary judgment [docket # 33]. The amended motion for summary judgment was filed to correct grammar and spelling errors. Because that amended pleading does not make any substantive changes to the originally filed motion for summary judgment, it will not be discussed separately herein.

2. All information contained in the parties' stipulation and not otherwise set forth in this Opinion is incorporated by this reference as if fully re-written herein.

ty. *Searcy v. City of Dayton*, 38 F.3d 282, 285 (6th Cir.1994); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991). A material fact is one that must be decided before there can be a resolution of the substantive issue that is the subject of the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Through her complaint, plaintiff-trustee sets forth eight counts against Huntington. Although FED. R. CIV. P. 56(a) provides that a party may seek summary judgment "upon a claim," plaintiff-trustee's motion for summary judgment does not make specific reference to *any* of the counts in her complaint. Instead, plaintiff-trustee sets forth topical headings (i.e. "Conversion, Warranty and Good Title") which, in many instances, may apply to more than one count.[3] Because Rule 56 provides that summary judgment may be granted as to a "claim," the Court will address each count of plaintiff-trustee's complaint in turn.

### A. *Count One of the Complaint*

▮ In Count One of her complaint, plaintiff-trustee contends that the Checks are property of World Metal's bankruptcy estate pursuant to 11 U.S.C. § 541 and thus subject to turnover. *See* Complaint at ¶¶ 5–23. The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a). Exactly what property interests of the debtor become property of the bankruptcy estate is determined by § 541 of the Bankruptcy Code which provides, in relevant part, that the bankruptcy estate "is comprised of all the following property, wherever located and by whomever held:

... all legal or equitable interests of the debtor in property, as of the commencement of the case." 11 U.S.C. § 541(a)(1). This provision of the Bankruptcy Code was intended by Congress to be broad in its scope. *Forbes v. Lucas (In re Lucas)*, 924 F.2d 597, 600 (6th Cir.1991). If a third party is in possession of property of a bankruptcy estate, that third party is obliged to turn over such property to the trustee. 11 U.S.C. § 542(a).

As noted above, the named payee on each of the Checks was one of the following: World Metals, SPEC/STS Metals or Spec Metals. The parties do not appear to dispute that each of the Checks made payable to World Metals would be property of this bankruptcy estate to the extent that World Metals still had a right to those Checks (or the proceeds thereof) when its bankruptcy case was filed. However, as discussed more fully below, whether Huntington is in possession of such property is an issue of disputed, material fact.

As for the Checks made payable to SPEC/STS Metals or Spec Metals, plaintiff-trustee does not set forth in her complaint, her motion for summary judgment or her response to Huntington's motion for summary judgment any explanation of whether or how SPEC/STS Metals or Spec Metals is related to debtor. In fact, Huntington specifically takes issue with whether debtor has any rights to such checks. *See* Def. Resp. Memo in Opp. to Mot. for S.J. at pg. 9 (*citing* Ohio Revised Code ("O.R.C.") § 1303.08(A)).[4]

Based upon the foregoing, the Court finds that there exists a genuine dispute

---

**3.** Needless to say, the way in which plaintiff-trustee chose to style her motion for summary judgment added unnecessary confusion to this matter.

**4.** That provision of the O.R.C. sets forth that "[t]he person to whom an instrument is ini-

tially payable is determined *by the intent* of the person, whether or not authorized to sign the instrument, who signs the instrument as, in the name of, or in behalf of the issuer of the instrument...." O.R.C. § 1303.08(A) (emphasis added).

over material facts as to Count One of plaintiff-trustee's complaint. Accordingly, summary judgment on that count is not appropriate.

## B. *Count Two of the Complaint*

■ In Count Two of her complaint, plaintiff-trustee contends that defendant failed to properly inquire as to whether Ms. Woolard–Glause had any authority to present the Checks for deposit into the Woolard–Glause Account and that, due to such failure, Huntington is liable to debtor. *See* Complaint at ¶¶ 24–29.

> The actions, conduct and/or omissions of Defendant Huntington Bank have proximately caused the injuries and damages which are the subject of Debtor World Metals [sic] claims against Defendant Huntington Bank. Said actions, conduct and/or omissions are in violation of the Uniform Commercial Code as codified in the Ohio Revised Code, and are in violation of Ohio common law and statutory law.

Complaint at ¶ 29. Huntington contends that, to the extent the complaint is alleging a common law negligence claim, such claim is preempted by the Uniform Commercial Code (the "U.C.C."). *See* Def. Memo in Supp. of Mot. for S.J. at pg. 11–12.

In order to facilitate resolution of commercial disputes, the drafters of the U.C.C. sought to establish a set of rules that would eliminate the need to rely upon general principles of law outside of the U.C.C. *See* Bryan D. Hull, *Common Law Negligence and Check Fraud Loss Allocation: Has Common Law Supplemented or Supplanted the U.C.C.?*, 51 Ohio St. L.J. 605, 608 (1990). *See also* O.R.C. § 1301.02(B) (which incorporates § 1–102 of the U.C.C.). Even in situations where a specific result is not provided, the U.C.C. is to be "liberally construed and applied to promote its underlying purposes and policies." O.R.C. § 1301.02(A). However, the U.C.C. also provides that general principles of law and equity are left in place, "[u]nless displaced by the particular provisions ... of the ... Code." O.R.C. § 1301.03 (which incorporates § 1–103 of the U.C.C.).

Although § 3–420 of the U.C.C. (which is incorporated into the O.R.C. by § 1303.60(A)) would appear to displace a common law negligence action against a bank for paying over a forged endorsement,[5] Count Two of the complaint makes general references to both common law and the U.C.C. Accordingly, it is unclear whether plaintiff-trustee is trying to advance a negligence claim based solely upon Ohio common law.[6]

---

5. *See* 1 Anderson U.C.C. § 1–103:30 (Dec. 2003) ("The U.C.C. displaces any negligence common-law action against a bank for paying on a forged endorsement.") (*citing Hinkle v. Cornwell Quality Tool Co.*, 40 Ohio App.3d 162, 532 N.E.2d 772 (1987)). *But see* 6A Anderson U.C.C. § 3–419:87 (June 2003):

    However, the circumstances may be such that a bank may be liable both for negligence and for conversion. Thus a bank was liable for negligence and conversion when it cashed checks of the payee on the unauthorized endorsement of an employee of the payee without making any inquiry as to the employee's authority. In contrast, the bank's negligence that is not related to

the paying over a forged endorsement is of no significance. Therefore, the fact that the customer's bank may have been negligent in its action or in failing to train its employees does not entitle the customer to sue the bank for negligence in cashing checks on which the customer's dishonest employee had forged either the payee's name or the customer's name.

6. In addition to the fact that Count Two is not clearly crafted, plaintiff-trustee has failed to in any way respond to Huntington's argument that the U.C.C. preempts a common law claim of negligence.

Based upon the foregoing, the consideration of summary judgment on Count Two of the complaint is not appropriate at this time. The Court will permit plaintiff-trustee to amend Court Two of her complaint to more clearly set forth the relief she is seeking and the specific law she is relying upon for such relief. After that amendment is filed, defendant may (with prior permission of the Court and, if applicable) renew its motion for summary judgment as to Count Two. If plaintiff-trustee does not so amend Count Two by the date specified in a Scheduling Order which will be entered separately in this proceeding, judgment on Count Two, for failure to state a claim upon which relief can be granted, will be entered.

## C. Count Three of the Complaint

■ In Count Three of her complaint, plaintiff-trustee contends that the Checks, which were deposited into the Woolard–Glause Account, were not properly payable and that, therefore, Huntington violated O.R.C. § 1304.30. See Complaint at ¶¶ 30–32. That provision of the O.R.C. (which incorporates § 4–401 of the U.C.C.) addresses the relationship between a bank and its customer and states, in part:

(A) A bank may charge *against the account of a customer* an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized *by the customer* and is in accordance with any agreement *between the customer and bank.*

(B) A customer is not liable for the amount of an overdraft if the customer neither signed the item nor benefitted from the proceeds of the item.

O.R.C. § 1304.30(A) and (B) (emphasis added). "Bank" is defined as "a person engaged in the business of banking" and "customer" is defined as "a person having an account with a bank." O.R.C. § 1304.01(A)(5) and (B)(1).

A bank may be liable under § 1304.30 of the O.R.C. if it beaches the contract it entered into with a customer upon creation of the customer's account. See 6 Anderson U.C.C. § 4–401:98 (Dec.2003). The only account at issue in this adversary proceeding is the one between Huntington and its "customer," Patrice Woolard–Glause,[7] and there has been no allegation by plaintiff-trustee that she is in privity with Ms. Woolard–Glause relative to that account.[8]

Based upon the foregoing, the Court finds that plaintiff-trustee does not have standing to bring Count Three of the complaint. Accordingly, plaintiff-trustee's motion for summary judgment as to Count Three is not well taken and will be denied and defendant's motion for summary judgment as to Count Three is well taken and will be granted.

## D. Count Four of the Complaint

■ In Count Four of her complaint, plaintiff-trustee contends that by allowing Ms. Woolard–Glause to obtain depository

---

7. It does not appear that World Metals had an account with Huntington at any time relevant to this adversary proceeding. See Aff. of Diane Oriani at ¶ 11 (attached to Def. Mem. in Supp. of Mot. for S.J. at Ex. "B").

8. In her motion for summary judgment plaintiff-trustee sets forth only one cursory reference to O.R.C. § 1304.30 (see Pl. Mot. for S.J. at pg. 7). Moreover, notwithstanding the fact that defendant specifically addresses plaintiff-trustee's lack of standing in its motion for summary judgment (see Def. Mem. in Supp. of Mot. for S.J. at pgs. 9–10), plaintiff-trustee does not set forth in her responsive pleading any discussion of how O.R.C. § 1304.30 would apply to this adversary proceeding.

credit for the Checks, Huntington failed in the duties of a depository under Ohio law and is thus liable to plaintiff-trustee pursuant to Ohio Revised Code § 1303.60(C). *See* Complaint at ¶¶ 33–37. In her motion for summary judgment plaintiff-trustee states:

> As a depository bank, [defendant] was in the best position to stop any conduct by parties in this matter that was improper or illegal. R.C. § 1303.60(C). By allowing Patricia Woolard to obtain depository credit for the Checks, [d]efendant … failed in the duties of a depository bank under Ohio law. As a result, [d]efendant … should be liable to Plaintiff on the Checks deposited in Patricia Woolard's personal account pursuant to Ohio Revised Code Section 1303.60(C).

Pl. Mot. for S.J. at pg. 9.

Section 1303.60 of the O.R.C. (which incorporates § 3–420 of the U.C.C.) addresses conversion and states, in part:

> (A) The law applicable to conversion of personal property applies to instruments. An instrument also is converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment….

O.R.C. § 1303.60(A). It is unclear as to why, in her complaint and her motion for summary judgment, plaintiff-trustee references *only* subsection (C) of O.R.C. § 1303.60 as that subsection merely provides a "good faith" defense to a conversion claim which is limited to collecting

banks other than the depository bank. *See* O.R.C. § 1303.60(C).[9] *See also* 6 Anderson U.C.C. § 3–420:1R (Dec.2003). Because Huntington would, under the facts of this case, be the depository bank as it was the first bank to take the Checks, *see* O.R.C. § 1304.01(B)(2) [as incorporated into Chapter 1303 by O.R.C. § 1303.01(C) ], subsection (C) appears to be inapplicable to this adversary proceeding. Given that Huntington has not taken issue with plaintiff-trustee's reference to only subsection (C) of O.R.C. § 1303.60 and that the Federal Rules set forth fairly liberal pleading requirements, *see* FED. R. CIV. PR. 8, the Court does not consider such reference to be a fatal error.

At least two defenses may be asserted against a claim of conversion of a negotiable instrument: (1) if the payee of the instrument is an employer and the forgery was accomplished by an employee entrusted by the payee with responsibility for the instrument and (2) if the forgery was enabled by the negligence of the payee. *See* O.R.C. § 1303.47 (which incorporates § 3–405 of the U.C.C.) and O.R.C. § 1303.49 (which incorporates § 3–406 of the U.C.C.). *See also Golden Years Nursing Home (No. 2), Inc. v. Gabbard,* 94 Ohio App.3d 430, 640 N.E.2d 1186, 1189–90 (1994); *San Tan Irrigation Dist. v. Wells Fargo Bank,* 197 Ariz. 193, 3 P.3d 1113, 1115 (Ct.App.2000). Inherent in each of these defenses are issues of fact which are still in dispute in this case and which must be resolved prior to determining whether and to what extent a payee may recover from a bank.

In its answer Huntington does not make any specific reference to either § 1303.47

---

9. O.R.C. § 1303.60(C) sets forth the following:

(C) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

or § 1303.49 of the O.R.C. nor does Huntington reference those provisions anywhere in its motion for summary judgment or its responses to plaintiff-trustee's motion for summary judgment. Huntington does, however, set forth the following affirmative defenses in its answer, which when viewed in the light most favorable to Huntington as the non-moving party, could be construed as raising defenses to plaintiff-trustee's conversion claim:

3. The losses suffered by World Metals, if any, were caused by superseding or intervening events, circumstances, or persons beyond the control of Huntington, and World Metals failed to exercise due care to avoid the losses alleged.

4. Huntington states that World Metals was negligent and its negligence solely caused, contributed to, or was greater than that of Huntington in causing whatever damages it may have suffered

Answer at pg. 5. As noted above, whether or not such defenses are valid raise issues of material fact which are still in dispute in this case. Accordingly, summary judgment cannot be granted as to Count Four of plaintiff-trustee's complaint.[10]

### E. Count Five of the Complaint

■ In Count Five of her complaint, plaintiff-trustee contends that Huntington failed to exercise ordinary care in accepting the Checks for deposit and that such failure to observe reasonable commercial standards substantially contributed to the loss incurred by World Metals. See Complaint at ¶¶ 38–41. In her motion for summary judgment, plaintiff-trustee states the following as to this count:

Defendant ... breached the duty of ordinary care when it permitted Patricia Woolard to deposit [the] Checks ... into Patricia Woolard's personal account at Huntington National Bank. Defendant Huntington National Bank had actual knowledge that Patricia Woolard's depository account was a personal checking account and opened under her social security number.... Moreover, there is no factual evidence that Patricia Woolard ever used this personal account to deposit funds payable to "World Metals, Inc." before April 2001. Yet, from April to May, 2001, Huntington National Bank allowed Patricia Woolard to deposit the above listed Checks into her personal account without any type of inquiry or care as to whether or not Patricia Woolard could make these deposits that involved substantial sums of money. Therefore, Huntington National Bank failed to observe the reasonable commercial standards prevailing in the area and its own internal policy ....

Pl. Mot. for S.J. at pg. 6. As accurately noted in defendant's response to plaintiff-trustee's motion for summary judgment, such statement sets forth unsupported factual assertions which are both material to the outcome of this adversary proceeding and the subject of dispute. See Def. Resp. Mem. in Opp. to Pl. Mot. for S.J. at pgs 2–

---

10. In addition to the assertion of factually intensive defenses, Huntington sets forth the following statement in its motion for summary judgment:

Woolard–Glause opened a personal checking account at Huntington in August 1998. In 2001, she began depositing checks payable to World Metals into the account using deceptive deposit slips crafted to conceal that it was a personal checking account....

It was not apparent from the deceptive deposit slips that the checks were deposited into a personal account.

Def. Mem. in Supp. of Mot. for S.J. at pg. 2–3. Notwithstanding that such statement clearly references facts to which the parties *have not* stipulated, Huntington chose to include this statement under the header of "Statement of Undisputed Facts." *See id.* at pg. 2.

3. Accordingly, summary judgment cannot be granted as to Count Five plaintiff-trustee's complaint.

## F. Count Six of the Complaint

■ In Count Six of her complaint, plaintiff-trustee contends that Huntington is not a holder in due course pursuant to O.R.C. § 1303.32 and that debtor, as the true owner of the Checks or their proceeds, has a property or possessory interest therein pursuant to O.R.C. § 1303.36(C). *See* Complaint at ¶¶ 42–44. Section 1303.36(C) of the O.R.C. sets forth the following:

> (C) A person who takes an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

O.R.C. § 1303.36(C). As accurately noted by Huntington in its motion for summary judgment, O.R.C. § 1303.36(C) does not, by itself, create an affirmative claim for relief. *See* Def. Mem. in Supp. of Mot. for S.J. at pgs. 14–15. Instead, that statutory provision merely states that an ordinary holder (as opposed to a holder in due course) takes an instrument subject to certain defenses. *See* 6 Anderson U.C.C. § 3–306:3 (Dec.2003).

In her motion for summary judgment, plaintiff-trustee merely recites the text of O.R.C. § 1303.32 and § 1303.36(C) and contends that Huntington is not a holder in due course of the Checks. *See* Pl. Mot. for S.J. [docket # 21] at pg. 11. Plaintiff-trustee does not provide any explanation as to how these statutory defenses would somehow provide her with an affirmative right to pursue Huntington.

Based upon the foregoing, the Court finds that § 1303.36(C) of the O.R.C. does not provide an independent cause of action. Accordingly, plaintiff-trustee's motion for summary judgment as to Count Six is not well taken and will be denied and defendant's motion for summary judgment as to Count Six is well taken and will be granted.

## G. Count Seven of the Complaint

■ In Count Seven of her complaint, plaintiff-trustee contends that Huntington allowed for the breach of transfer warranties and all warranties providing for good title of the Checks. *See* Complaint at ¶¶ 45–46. Although Ohio has adopted the U.C.C.'s two transfer warranty provisions,[11] those warranties flow only to payor and collecting banks and/or those banks' transferees. *G.F.D. Enterprises, Inc. v. Nye*, 37 Ohio St.3d 205, 525 N.E.2d 10, 20 (1988). Transfer warranties do not extend to a check payee, such as World Metals, because a check payee is not a transferee within the check negotiation chain. *See Tricon Roofing, Inc. v. Gabor's Dunham Fast Check, Inc.*, 2003 WL 21360647 (Ohio Ct.App. June 12, 2003).

Based upon the foregoing, the Court finds that World Metals may not allege violations of transfer warranties as to the Checks and, as such, that plaintiff-trustee does not have standing to bring a cause of action for the breach of those warranties. Accordingly, plaintiff-trustee's motion for summary judgment as to Count Seven is not well taken and will be denied and defendant's motion for summary judgment

---

**11.** Those two provisions are O.R.C. § 1303.56 (which incorporates U.C.C. § 3–416) and O.R.C. § 1304.17 (which incorporates U.C.C. § 4–207).

as to Count Seven is well taken and will be granted.

## H. *Count Eight of the Complaint*

■ In Count Eight of her complaint, plaintiff-trustee contends that in depositing the Checks into her personal account Ms. Woolard–Glause breached her fiduciary duty to World Metals and that Huntington had notice of such breach pursuant to O.R.C. § 1303.37. *See* Complaint at ¶¶ 47–52. Section 1303.37 of the O.R.C. addresses when a person who has taken an instrument from a fiduciary has notice of a breach of fiduciary duty that occurs as a result of the transaction with the fiduciary. *See* 6B Anderson U.C.C. § 3–307:1R (Dec. 2003).[12] A person will be deemed to have such notice if *inter alia,* "the taker has knowledge of the fiduciary status of the fiduciary ...." O.R.C. § 1303.37(B). *See also* O.R.C. § 1303.37(A)(1) (defining the term "fiduciary").

The parties have not stipulated as to whether Ms. Woolard–Glause was a fiduciary to World Metals which is, clearly, material to determining whether O.R.C. § 1303.37 even applies.[13] Moreover, Huntington contends that Ms. Woolard–Glause "used deception to conceal that the checks were being deposited into a personal account." Def. Mot. for S.J. at. pg. 14.

Because genuine issues of material fact exist as to whether Ms. Woolard–Glause is a fiduciary within the meaning of O.R.C. § 1303.37 and, if so, whether Huntington had the requisite knowledge of that fiduciary relationship, summary judgment is not appropriate on Count Eight of the complaint.

## I. RATIFICATION DEFENSE

■ Huntington contends that it is entitled to summary judgment as to all the counts in plaintiff-trustee's complaint because a document signed by E. William Glause, on behalf of World Metals, expressly ratified the deposit of the Checks into the Woolard–Glause Account. That document sets forth, in part, the following:

> I, William Glause, hereby certify that I am President of World Metals, Inc. and on behalf of World Metals, Inc. ratify the endorsement on the following checks and any other checks payable to World Metals, Inc. on behalf of World Metals, Inc., and authorize The Huntington National Bank to further indorse said checks and any other checks on behalf of World Metals, Inc. and further ratify the deposit of said checks and any other checks to the account of Patrice Glause at the Huntington National Bank ....

Def. Mot. for S.J. at Ex. D.

Although the parties did not include any reference to the foregoing document in their stipulation, plaintiff-trustee does not challenge its existence in her response to Huntington's motion for summary judgment. Instead, plaintiff-trustee challenges the legal effect of such document as there

---

**12.** Huntington contends that § 1303.37 does not create an affirmative claim for relief. Def. Mot. for S.J. at pg. 13. Although this provision of the Ohio Revised Code may not, by itself, create an affirmative claim for relief, it appears, through her motion for summary judgment, that plaintiff-trustee is also relying upon the Uniform Fiduciaries Act to allege liability. Pl. Mot. for S.J. at pg. 12.

**13.** Interestingly, the parties stipulated to the fact that Ms. Woolard–Glause was employed by World Metals as its bookkeeper and controller but did not specify the dates of such employment. Therefore, even if it were assumed that a bookkeeper and controller has a fiduciary duty to her employer, such fiduciary relationship could not be deemed established for purposes of consideration of the parties' motions for summary judgment because it is unclear whether an employment relationship existed at the time of the arguably improper conduct.

is nothing in the record to indicate that Mr. Glause, as president and majority shareholder, had the authority to ratify actions on behalf of World Metals. *See Campbell v. Hospitality Motor Inns, Inc.,* 24 Ohio St.3d 54, 493 N.E.2d 239 (1986) (discussing ratification by a corporation's board of directors). *Also compare* O.R.C. § 1701.59 (authority of board of directors) *with* O.R.C. § 1701.64 (authority of officers). Moreover, there appears to be a dispute as to Mr. Glause's intent in signing the purported ratification as the words "under protest of your misconduct" appear under his signature. Def. Mot. for S.J. at Ex. D.

Based upon the foregoing, the Court finds that there exists a genuine dispute over material facts as to whether or not World Metals ratified Ms. Woolard–Glause's deposit of the Checks into her personal account. Accordingly, summary judgment as to this defense is not appropriate.

## J. LACHES DEFENSE

Huntington also contends that it is entitled to summary judgment as to all the counts in plaintiff-trustee's complaint based upon the doctrine of laches "because the Trustee's claims (on behalf of World Metals) were filed over two years after the check deposits that are the basis for its claims." Def. Mem. in Supp. of Mot. for S.J. at pg. 15. Laches is an equitable doctrine based upon an omission to assert a right for an unreasonable and unexplained length of time under circumstances which result in prejudice to the adverse party. *Connin v. Bailey,* 15 Ohio St.3d 34, 472 N.E.2d 328, 329 (1984).

In their respective arguments regarding the application of the doctrine of laches, Huntington and plaintiff-trustee make reference to material facts which have not been the subject of stipulations:

Huntington did not pursue any claims against Woolard–Glause in reliance on Glause's ratification. Since then, Glause has closed her account at Huntington and the viability and collectability of World Metals and the Glause family have been markedly impaired, as evidenced by World Metal's bankruptcy.

Def. Mem. in Supp. of Mot. for S.J. at pg. 15.

In the instant case, Huntington cannot meet the elements of the laches defense because there has been no unreasonable delay by the Trustee to assert World Metal's claims in light of the fact that the corporation, World Metals, stopped conducting business in April, 2001. Creditor, First International Bank had already filed a lawsuit against World Metals and its assets were being attached by May, 2001. The corporation, World Metals, did not know that its funds were being diverted by its employees or its corporate president due to the fact that it's [sic] accounting and bank records were missing.... Finally, the Receiver, on behalf of Debtor World Metals did file an action against William Glause, Patricia Glause and several other entities for conversion, civil conspiracy, fraudulent transfers and breach of fiduciary duty.... In this action, the Receiver did claim the Checks deposited by Patricia Woolard in her personal account at Huntington National Bank as property of Debtor World Metals. This action was stayed when World Metals filed for Chapter 7 bankruptcy in January, 2003 and the Trustee has been substituted in this action.

The Receiver's agent, Mark Uhrich, had to wait several months in order to complete his investigation of World Metals's missing accounting and bank records.... After the records were obtained, there has been no unreasonable

delay in light of the mammoth task of reviewing hundreds of bank account statements and/or deposits made by the Glauses's into at least five different bank accounts in order to identify the individual deposits or endorsements that could lead to a cause of action under Articles Three and Four of the Uniform Commercial Code. In addition, there is no prejudice to Huntington National Bank because there is no loss of evidence or any impairment of collectibility [sic] from Patricia Woolard or William Glause

Pl. Resp. to Def. Mot. for S.J. at pg. 9–10.

Based upon the foregoing, the Court finds that there exists a genuine dispute over material facts as to whether or not the doctrine of laches is applicable in this case. Accordingly, summary judgment as to this defense is not appropriate.

## CONCLUSION

Based upon the foregoing, the Court finds that plaintiff-trustee's motion for summary judgment is not well taken and will not be granted. The Court further finds that Huntington's motion for summary judgment is well taken as to Counts Three, Six and Seven of plaintiff-trustee's complaint. The balance of Huntington's motion for summary judgment is not well taken and will not be granted. A separate entry of judgment consistent with this Memorandum Opinion will be entered. A separate scheduling order regarding the remaining counts of plaintiff-trustee's complaint will also be entered.

**IT IS SO ORDERED.**